**19SL-CC02729**

## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
## STATE OF MISSOURI

| | | |
|---|---|---|
| **DREW HUSKEY,** *individually and on behalf of all others similarly situated,* | ) ) ) ) | Case No. _____ |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **JURY TRIAL DEMANDED** |
| **COLGATE-PALMOLIVE COMPANY,** *and* **DOES 1 through 10,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

<u>**CLASS ACTION PETITION**</u>

Plaintiff R. Drew Huskey, individually and on behalf of all others similarly situated, hereby files this, his Class Action Petition, against Defendant Colgate-Palmolive Company and DOES 1 through 10 (collectively "Defendants") for their false, misleading, and deceptive marketing of their products in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA").

### I.    <u>INTRODUCTION</u>

1.    Defendant Colgate-Palmolive Company ("Colgate") markets and sells many different consumer products, including deodorant and antiperspirant sticks. One such product is "Speed Stick"-branded, "Stain Guard" antiperspirant.

2.    The "Stain Guard" line of products is deceptively and misleadingly marketed as being a product that "fights yellow stains" and "fights white marks," and having a formula that provides odor and wetness protection while "helping fight yellow stains on shirts"; yet, in reality, the "Stain Guard" line of antiperspirant is nothing more than a slightly diluted version of regular "Speed Stick"-branded antiperspirant containing essentially the same ingredients with nothing added to "fight" white marks or yellow staining.

1

Electronically Filed - St Louis County - July 04, 2019 - 03:31 PM

3.      Compared to the non-"Stain Guard" version of "Speed Stick" antiperspirant it does not contain a single addition ingredient allowing it to "fight" stains or marks; the only material difference is that the Active ingredient in "Speed Stick's" non-"Stain Guard" antiperspirant, Aluminum Zirconium Tetrachlorohydrex GLY, is diluted from a concentration of approximately 16%, to approximately 10% in the "Stain Guard" line of products.

4.      Yet even more problematic, it is well-established that the "yellow stains" and "white marks" that the "Stain Guard" line of antiperspirants claims to "fight," are in fact *created* and *caused by* that very same active ingredient, Aluminum Zirconium Tetrachlorohydrex GLY ("Aluminum").

5.      Thus, in reality, while perhaps doing it to a slightly lesser extent than Speed Stick's non-"Stain Guard" antiperspirants, the "Stain Guard" line of antiperspirants actually *causes* the very problems Colgate deceptively claims it "fights."

6.      In short, while "Stain Guard" is marketed as "fighting" white marks and stains, it is nothing more than a less-effective version of Speed Stick's non-"Stain Guard" antiperspirant that causes the very problem it claims to solve.

7.      Despite all this, and despite being a diluted version thereof, and despite being sold in containers containing *less* of the active ingredients, Colgate sells the product at the same or *higher* price than its non-"Stain Guard" antiperspirant product, misleading and deceiving the buying public into paying the same amount for an inferior product while under the false impression that it is somehow superior.

8.      Pursuant to the MMPA, such practice is illegal.

## II.    PARTIES, JURISDICTION, AND VENUE

9.      Plaintiff Drew Huskey is a citizen and resident of St. Louis County, Missouri.

10.     Plaintiff brings this Class Action Petition individually and on behalf of a putative class of all Missouri residents.

Electronically Filed - St Louis County - July 04, 2019 - 03:31 PM

11.      Defendant Colgate-Palmolive Company ("Colgate") is a Delaware corporation having its principal place of business at 300 Park Avenue, New York, NY 10022. Colgate may be served at: CT Corporation System, 120 South Central Ave., Clayton MO 63105.

12.      Defendant Colgate advertises, distributes, markets and sells "Speed Stick"-branded, "Stain Guard" antiperspirant.

13.      The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein.  If necessary, Plaintiff will seek leave of Court to amend the Petition to reflect the true names and capacities of the DOE Defendants when such identities become known.

14.      Venue is proper in the Circuit Court of St. Louis County, Missouri, because the Plaintiff resides here, and a substantial part of the events or omissions giving rise to the claims in this action occurred in this venue.

15.      This forum also is superior in convenience to any other, as all of the Plaintiffs are or were Missouri citizens and are located in Missouri, and the acts complained of violated Missouri law.

16.      This asserted class action comports with Missouri Supreme Court Rule 52.08 and with R.S.Mo. § 407.025(3) of the MMPA.  Plaintiffs' identities can be ascertained from Defendant's records, but are so numerous that simple joinder of all individuals is impracticable.  This action raises questions of law and fact common among Plaintiffs.  The claims of lead Plaintiff is typical of all Plaintiffs' claims. Named Plaintiff will fairly and adequately protect all Plaintiffs' interests, and is represented by attorneys qualified to pursue this action. More specifically:

17.      <u>Class definition</u>:  Plaintiff Drew Huskey brings this action on behalf of himself and a

3

Electronically Filed - St Louis County - July 04, 2019 - 03:31 PM

class of similarly-situated persons preliminarily-[1] defined as follows: All Missouri consumers, who, within the Class Period, purchased "Speed Stick"-branded, "Stain Guard" antiperspirant (the "Product")[2] in the State of Missouri.  The Class Period begins five years prior to the date of the filing of this Petition, and ceases upon the date of the filing of this Petition.  Excluded from the Class are: (a) any judges presiding over this action and members of their staffs and families; (b) the Defendants and their subsidiaries, parents, successors, and predecessors; any entity in which the Defendants or their parents have a controlling interest; and the Defendants' current or former officers and directors; (c) employees (i) who have or had a managerial responsibility on behalf of the organization, (ii) whose act or omission in connection with this matter may be imputed to the organization for liability purposes, or (iii) whose statements may constitute an admission on the part of the Defendants; (d) persons who properly execute and file a timely request for exclusion from the class; (e) the attorneys working on the Plaintiffs' claims; (f) the legal representatives, successors, or assigns of any such excluded persons; and (g) any individual who assisted or supported the wrongful acts delineated herein.

18.    <u>Numerosity</u>:  Upon information and belief, the Class includes tens of thousands, if not hundreds of thousands, of individuals on a statewide basis, making their individual joinder impracticable.  Although the exact number of Class members and their addresses are presently unknown to Plaintiff, they are ascertainable from Defendants' records.

19.    <u>Typicality</u>: Plaintiff's claims are typical of those of the Class because all Plaintiffs were injured by the Defendants' uniform wrongful conduct, specifically, using misleading and deceptive marketing and advertising in offering and selling the Product to Plaintiffs.

20.    <u>Adequacy</u>:  Plaintiff Drew Huskey is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained

---

[1] Plaintiff reserves the right to propose, as needed, any different or other more- or less-specific class, classes, subclass, or subclasses as Plaintiff deems appropriate for purposes of class certification.
[2] As that term and label is defined in greater detail *infra*.

Electronically Filed - St Louis County - July 04, 2019 - 03:31 PM

competent and experienced counsel, and he intends to prosecute this action vigorously. The interests of the Class will be protected fairly and adequately by Plaintiff and his counsel.

21.     <u>Commonality</u>:  Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual members, such as: (a) whether the Defendant used deceptive or misleading marketing and advertising in selling the Product; (b) whether and to what extent the Class members were injured by Defendant's illegal conduct; (c) whether the Class members are entitled to compensatory damages; (d) whether the Class members are entitled to punitive damages; (e) whether the Class members are entitled to declaratory relief; and (f) whether the Class members are entitled to injunctive relief.

22.     <u>Superiority</u>:  This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The damages suffered by the individual Class members will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by the Defendant's wrongful conduct.  Thus, it would be extremely difficult for the individual Class members to obtain effective relief.  A class action presents far fewer management difficulties and provides the benefits of a single adjudication, including economies of time, effort, and expense, and uniformity of decisions.

## III.     **BACKGROUND**

23.     Defendant manufactures, distributes, and/or sells the product at issue herein, "Speed Stick"-branded, "Stain Guard" antiperspirant.

24.     Defendant Colgate, in particular, owns the "Speed Stick" brand and, under that brand name, manufactures and distributes, *inter alia,* "Stain Guard" antiperspirant.

25.     The "Stain Guard" line of products is marketed as being superior to non-"Stain Guard" antiperspirant purportedly for having the ability to "fight yellow stains" and to "fight white marks" on a user's clothing, purportedly protecting against odor and wetness "while helping fight yellow stains on

Electronically Filed - St. Louis County - July 04, 2019 - 03:31 PM

shirts."[3]

26.     The "Stain Guard" line of antiperspirants comes in a few different varieties and scents, all of which have the same ingredients and are substantially similar such that they should be considered collectively in this lawsuit; accordingly, all scents and varieties of the "Stain Guard" line are collectively referred to hereinafter as the "Product."

27.     The packaging of the Product makes various claims, depending upon its labels; one version of the packaging appears as follows:



a.

28.     As shown, the "Stain Guard" line is marketed as being a product that "Fights Stains on Shirts."

29.     Another variation of the "Stain Guard" packaging contains claims that the Product "fights yellow stains" and "fights white marks."

---

[3] https://www.speedstick.com/en-us/products/stainguard#buynow

Electronically Filed - St. Louis County - July 04, 2019 - 03:31 PM

30.     However, the active ingredient in the Product is Aluminum Zirconium Tetrachlorohydrex GLY. It has long been recognized, and is well-accepted, that "yellow stains" and "white marks" on clothing is *caused*, at least indirectly, by aluminum in antiperspirants (generally upon being mixed with a user's perspiration).

31.     Even worse, when tested, the Product undeniably leaves white marks on clothing of multiple colors.

32.     While the Product might in fact cause *less* staining than the "normal" "Speed Stick" product and/or other antiperspirants on the market, it is irrefutable that the Product will inevitably lead and contribute to more staining on clothing than when it is not used at all.

33.     Thus, regardless of the extent, the Product causes, at least indirectly, the exact condition – "staining" and/or "white marks" – that it purports to "fight."

34.     As shown, in multiple instances, Colgate promotes the Product as "helping [to] fight" and being a product that "fights" white marks and yellow stains. Those claims are false.

35.     The Product does not "fight" white marks or yellow stains and, in fact, causes both.

36.     Rather than constituting a superior product relative to the non-"Stain Guard" "Speed Stick"-branded antiperspirant, the Product has exactly the same ingredients, with no added ingredients to "fight" stains or white marks.

37.     According to product packaging, both the Product and the non-"Stain Guard" "Speed Stick" antiperspirant line contain the following ingredients:

    a.   Active Ingredient: Aluminum Zirconium Tetrachlorohydrex GLY

    b.   Inactive Ingredients:

        i.   Elaeis Guineensis (Palm) Kernel Oil, Stearyl Alcohol, Cyclomethicone, C12-15 Alkyl Benzoate, PPG-14 Butyl Ether, Hydrogenated Castor Oil, Hydrogenated Soybean Oil, PEG-8

Electronically Filed - St Louis County - July 04, 2019 - 03:31 PM

Distearate, Fragrance, Behenyl Alcohol

38.    The *only* apparent or material difference between the Product and the non-"Stain Guard" line is that the active ingredient,  Aluminum Zirconium Tetrachlorohydrex GLY, is diluted from approximately 16% (in the non-"Stain Guard" line) to approximately 10% in the Product.

39.    Such dilution of an active ingredient does not add allow the Product to "fight" stains or white marks.

40.    Rather, the dilution of an active ingredient more likely simply reduces the effectiveness of the "normal" product, making the Product, in reality, inferior to the non-"Stain Guard" "Speed Stick" antiperspirant line.

41.    And that deceptive fact is in addition to the worse reality that the Product causes what it falsely claims to "fight" against -- white marks; upon testing, the Product readily creates white marks upon clothing of all colors; because it contains aluminum, when mixed with a user's sweat, it also will inevitably cause yellow staining as well.

42.    Defendant's "fights yellow stains" and/or "fights white marks" and/or simply "fights stains on shirts" claims are patently false.

43.    A normal consumer is unable to determine simply by reading the claims on the Product packaging and/or the Product's ingredient list that it actually contains no ingredients allowing it to "fight" against, or otherwise prevents white marks and yellow stains.

44.    While the fact is extremely well-established, a normal consumer also is unaware that Aluminum Zirconium Tetrachlorohydrex GLY is a key factor (along with a person's perspiration) that contributes to and, at least indirectly, *causes* the "yellow stains" and "white marks" the Product purports to "fight."

45.    Moreover, while the Product very obviously leaves "white marks" on clothing, a potential

Electronically Filed - St. Louis County - July 04, 2019 - 03:31 PM

purchaser is unable to test that fact prior to purchasing the Product.

46.    Upon information and belief, Defendant Colgate profits from the wide-spread practice of selling a diluted version of its regular product for a higher price than its non-diluted versions.

47.    Upon information and belief, it is cheaper for Colgate to produce the Product, a relatively-diluted version of its regular antiperspirant, than it is to produce its non-"Stain Guard" antiperspirant.

48.    Upon information and belief, Defendant Colgate deceptively and misleadingly markets the Product as falsely "fighting" white marks and yellow stains to hide the fact from consumers that the Product is, in fact, inferior in its primary purpose, preventing perspiration, and is cheaper to produce.

49.    Defendant's marketing and selling of the Product by use of the aforementioned false, deceptive, and misleading statements is illegal and prohibited under the MMPA.

*Facts Particular to Drew Huskey and Representative of the Proposed Class*

50.    In or around July of 2019, after having viewed Defendant's statements regarding the Product on www.speedstick.com, Plaintiff visited a retail outlet for Colgate products, particularly Walmart, located in St. Louis, Missouri.

51.    Due to the claims on the packaging as well as the statements on www.speedstick.com, Plaintiff falsely believed he was purchasing a product that was equally effective as the regular "Speed Stick" antiperspirant but having the ability to "fight" against white marks and stains; Plaintiff believed the Product would "fight," as opposed to cause, "white marks" and "yellow stains."

52.    Plaintiff thereafter purchased the Product.

53.    At the time he purchased the Product, Plaintiff was unaware of the falsity of the Product's claims and/or the falsity of Defendant's online claims regarding the Product.

54.    If Plaintiff had been aware of the falsity and misleading nature of Defendant's claims regarding the Product, he would not have bought the Product.

Electronically Filed - St Louis County - July 04, 2019 - 03:31 PM

55.    When Plaintiff purchased the Product, he was injured by Defendant's illegally deceptive, false, and misleading conduct in marketing and selling the Product.

56.    Although the aforementioned facts apply to named Plaintiff, for purposes of the proposed class, all that is relevant is that Plaintiff and the class members, Missouri citizens, purchased the Product at a time within the Class Period while in Missouri.

## CAUSES OF ACTION

### COUNT ONE: VIOLATION OF THE MMPA – Misleading, False, and Deceptive Marketing

57.    Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each preceding paragraph of this Petition, as though fully set forth herein.

58.    Defendant's acts complained of herein occurred in and emanated from the State of Missouri.

59.    Plaintiff and all members of the Class are "persons" and the Product is "merchandise" as those terms are defined under the MMPA.

60.    As set out in this Petition, Defendant's marketing of the Product constitutes deception, false pretense, misrepresentation, unfair practice, or, at a minimum, the concealment, suppression, or omission of a material fact in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA"), in particular, Defendant marketed the Product by falsely claiming it "fights" white marks and yellow stains, and/or "fights stains on shirts."

61.    As a result of Defendant's actions, consumers, including Plaintiff, were misled or deceived that the Product they were purchasing contained the claimed benefits and that it was capable of preventing conditions it actually contributes to and indirectly and directly causes.

62.    Defendant's deceptive acts caused Plaintiff and the Class Members an ascertainable loss within the meaning of the MMPA.  In particular, Plaintiff and the class paid for a Product that did not, in

10

Electronically Filed - St Louis County - July 04, 2019 - 03:31 PM

fact, contain the benefits claimed and did not, in fact, "fight" the conditions Defendant purports it did; rather, the Product actually *causes* staining and white marks.

63.    Due to Defendant's illegal conduct, Plaintiffs are entitled to restitution of all funds improperly obtained by Defendant.

64.    In addition, Defendant's conduct as aforesaid was wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiffs and others similarly situated and, therefore, warrants the imposition of punitive damages.

65.    Plaintiffs have been forced to hire attorneys to enforce their rights under the MMPA.

## COUNT TWO: INJUNCTIVE RELIEF

66.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth above.

67.    Defendant continues to retain payment made by Plaintiff and other members of the Class for the Product that is the result of Defendant's deceptive and misleading marketing in violation of the MMPA.

68.    Applicable law, including R.S. Mo. § 407.025, permits the Court to enter injunctive relief to prevent Defendant's continued violation of the law by continuing to falsely state that the Product "fights" white marks and/or yellow staining.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for an order certifying this action as a class action and appointing Plaintiff Drew Huskey as class representative and his counsel as class counsel. Plaintiff requests that this court find that the Defendant violated the MMPA, and award Plaintiffs compensatory damages, restitution, attorneys' fees, punitive damages, costs, and such further relief as the Court deems just.

Electronically Filed - St Louis County - July 04, 2019 - 03:31 PM

Respectfully submitted,

**DANIEL F. HARVATH, ESQ.**

By: /s/ *Daniel F. Harvath*
Daniel F. Harvath, #57599MO
**HARVATH LAW GROUP, LLC**
75 W. Lockwood, Suite #1
Webster Groves, MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com
*Attorney for Plaintiff*

12