UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DREW HUSKEY et al., | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 4:19-cv-02710-JAR |
| | ) |
| COLGATE-PALMOLIVE COMPANY, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Colgate-Palmolive Company's (hereinafter, "Colgate") motion to dismiss, or, in the alternative, strike the nationwide class allegations. (Doc. No. 28). The matter is fully briefed and ready for disposition. For the following reasons, the Court will grant the motion in part and deny it in part.

**I.    Background**

Colgate markets Speed Stick and Lady Speed Stick Stainguard antiperspirant products (hereinafter, "Stainguard products") as antiperspirant that "fights" yellow stains and white marks on clothing (hereinafter, the "Challenged Claim"). Plaintiff Drew Huskey and Plaintiff Jamie Richard both allege that, in or around July of 2019, they both purchased Stainguard products for personal use and, after using the products, they experienced white marks and the development of yellow stains on their clothing. Plaintiffs assert that these marks and stains were caused and created by the aluminum zirconium tetrachlorohydrex GLY (hereinafter, "aluminum") found within the Stainguard products and that—because the product itself contains an ingredient that

1

creates these marks—that Colgate's claims that Stainguard products "fight" yellow stains and white marks are false and misleading.

Plaintiff Huskey originally brought this class action petition in St. Louis County Circuit Court against Colgate asserting claims for breach of warranty (Count One); breach of implied contract (Count Two); and unjust enrichment (Count Three) on behalf of a nationwide putative class. Huskey also asserted claims against Colgate for misleading, false and deceptive marketing under the Missouri Merchandising Practices Act (hereinafter, "MMPA"), RSMo. § 407.010 et seq., (Count Four) and for injunctive relief (Count Five) on behalf of a putative subclass in the State of Missouri. Colgate removed the action to this Court on October 4, 2019. (Doc. No. 1). Likewise, Plaintiff Richards brought a substantively similar complaint—alleging the same claims against Colgate—in St. Louis City Circuit Court. Colgate removed Richard's action on October 29, 2019, and the cases were consolidated on November 12, 2019. (*See* Doc. No. 12, *Richards v. Colgate-Palmolive Company et al.*, 4:19-cv-02934-JAR).

## II.   Legal Standard

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ). A claim for relief "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Twombly*, 550 U.S. at 555 & n.3). This obligation requires

a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," *id.* at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id.* at 555-56; Fed. R. Civ. P. 8(a)(2). The principle that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions, however. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). In addition, all reasonable inferences from the complaint must be drawn in favor of the nonmoving party. *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001).

### III. Discussion

Colgate moves to dismiss all of Plaintiffs' claims. First, Colgate argues that Plaintiffs have failed to state a claim under the MMPA because (1) they have failed to allege sufficient facts showing that a reasonable consumer would be deceived by the Challenged Claim and (2) their allegations indicate that their purchases were made for the preconceived purpose of filing this lawsuit, rather than for personal, family, or household use. Second, Colgate alleges that Plaintiffs' claim for injunctive relief must fail because Plaintiffs do not allege a future intent to purchase the Stainguard products and—even to the extent that they did—Missouri law does not recognize injunctive relief as an independent cause of action. Third, Colgate argues that Plaintiffs' common law claims must be dismissed because they are implausible. Further, Colgate argues that Plaintiffs failed to sufficiently allege breach of warranty because they did not assert that they provided

3

Colgate with pre-suit notice and that their breach of implied contract claim must fail because the duty of good faith and fair dealing is not recognized in an implied-in-law contract.

Colgate also advances two arguments as to why Plaintiffs' putative nationwide class allegations for breach of warranty, breach of implied contract, and unjust enrichment should be dismissed. First, Colgate argues that the allegations must be dismissed because Plaintiffs will be unable to satisfy Rule 23(b)(3) due to the material variations in the laws of each consumer's home state which Colgate represents must be applied to their consumer protection claims. Second, Colgate argues that, applying the principles in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017) (hereinafter, "*Bristol-Myers*"), the Court lacks personal jurisdiction over the claims of non-resident putative class members thereby necessitating the dismissal of the class allegations.

### A. MMPA Claims

The MMPA is a broad statute, prohibiting "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020.1. To state a claim under the MMPA, a plaintiff must show that (1) he purchased merchandise from the defendant; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss; (4) as a result of an unlawful practice. Mo. Rev. Stat. § 407.025(1). A complaint alleging misrepresentations under the MMPA must also satisfy Rule 9(b) of the Federal Rules of Civil Procedure, which requires that the allegations of fraud be pled with particularity. *Vitello v. Natrol, LLC*, No. 4:18 CV 915 RWS, 2018 WL 6304900, at *1 (E.D. Mo. Dec. 3, 2018).

#### 1. Whether the Challenged Claim Would Be Deceptive to a Reasonable Consumer

Colgate first argues that Plaintiffs have failed to allege sufficient facts showing that the Challenged Claim is deceptive to a reasonable consumer. Rather, Colgate argues, Plaintiffs rely on conclusory arguments that do not meet the Rule 9(b) particularity requirement. In support of this assertion, Colgate begins by attacking Plaintiffs' allegations that Colgate's Stainguard products contain "nearly exactly the same ingredients" as non-Stainguard products—including aluminum, which Plaintiffs assert causes the stains—and contains "no added ingredients to 'fight' stains or white marks." Colgate contends that Plaintiffs cannot rely on their own assessments of the Stainguard products' ingredients to prove the inability of the Stainguard formula "as a whole" to "fight" stains. (Doc. No. 29 at 6-7 (citing *Hodges v. Vitamin Shoppe, Inc.*, No. 13-3381, 2014 WL 200270 (D.N.J. Jan. 15, 2014)).

In addition, Colgate argues that Plaintiffs' allegations that they noticed stains on their clothing after using the products does not necessarily mean the Challenged Claim is false. Specifically, Colgate argues that a reasonable consumer would not be deceived by its claim that the Stainguard product fights stains because it is "common sense" that a product that claims to fight stains does not mean that it prevents stains altogether. (*Id.* at 7). Colgate goes on to state that, "[t]he only logical way to understand the Challenged Claim[] is in relation to conventional antiperspirants that do not make such claims"; in other words, that "fights," taken in context, should be understood to mean that the Stainguard products are formulated to relatively reduce the staining effects typically associated with antiperspirants. (Doc. No.29; Doc. No. 33 at 4 (citing *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225 (9th Cir. 2019) (holding that, in context, the use of the word diet is understood as a relative claim about that soft drink's caloric amount compared to a regular soft drinks)). Colgate further urges the Court to take into consideration that Plaintiffs admitted in their original complaints—although not in their amended complaints—that

5

the Stainguard products "might in fact cause less staining" than other antiperspirants. Colgate argues that the fact that Plaintiffs admitted that Stainguard was formulated to cause less staining than other antiperspirants is fatal to their MMPA claims and requires that the claims be dismissed.

Plaintiffs, in response, argues that they have provided sufficient facts to state a claim under the MMPA. Plaintiffs assert that they both observed first-hand that Colgate's Stainguard products were creating and causing stains on their clothing after use. Plaintiffs state that these facts, taken in conjunction with the "buttressing" allegations that the Stainguard products contain an ingredient believed to cause those stains (i.e., aluminum), provide ample factual support that Colgate's Challenged Claim was deceptive. Further, Plaintiffs argue that the Court should not accept Colgate's argument that the Challenged Claim can only logically be understood to mean that the products "fights stains" relative to other antiperspirants. Plaintiffs argue that when they purchased the products, which do not state that they fight stains or marks in comparison to other antiperspirants, that they understood "fights stains" as meaning the products prevented them, rather than causing them to some lesser degree. Plaintiffs argue that this is a logical, alternative interpretation of the phrase that the Court should credit over Colgate's speculation as to how a reasonable consumer would understand the Challenged Claim.

After considering the parties' arguments, the Court is unpersuaded, at this early stage of the proceeding, that Plaintiffs' MMPA claims should be dismissed. On a motion to dismiss, the "MMPA requires courts to make case-by-case determinations of whether a defendant's conduct violates principles of fair dealing." *Toben v. Bridgestone Retail Operations, LLC*, 2013 WL 5406463, at *2 (E.D. Mo. Sept. 25, 2013), aff'd, 751 F.3d 888 (8th Cir. 2014). Where a court "can conclude as a matter of law that members of the public are not likely to be deceived . . . dismissal is appropriate." *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 761 (W.D. Mo. 2015)

(citation omitted). Courts applying the MMPA often recognize, however, that whether a reasonable consumer would be deceived is often a question of fact that cannot be resolved on a motion to dismiss. *See Thornton v. Pinnacle Foods Grp. LLC*, 2016 WL 4073713, at *3 n.3 (E.D. Mo. Aug. 1, 2016). As such, dismissals of MMPA claims are only granted in the rare circumstance where—as a matter of law—a reasonable consumer would not be deceived by a representation about a product. *See id.*

Here, the Court cannot say that as a matter of law a reasonable consumer would not be deceived by Colgate's Challenged Claim. Taking Plaintiffs' allegations as true, the Court finds it plausible that a reasonable consumer might rely on Colgate's representation that the Stainguard products "fights stains" to mean that they would prevent yellow stains and white marks from occurring. Plaintiffs have pleaded with sufficient particularity that the Challenged Claim was false, as they both alleged that—following the use of the product—their clothes developed stains and marks that they believed would be prevented, not caused, by Stainguard's products. As a result, The Court will not dismiss Plaintiffs' MMPA claims at this early stage in litigation. *See, e.g., Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 312-13 (Mo. App. 2016) (declining to decide how a "reasonable consumer" would perceive the term "all natural" at an early stage of litigation, and holding that the question is appropriately addressed on a motion for summary judgment or trial).

### 2. Purchase for a Personal, Family, or Household Purposes

Colgate next argues that Plaintiffs' MMPA claims should be dismissed because they cannot plausibly claim that they purchased the Stainguard products for personal use. Colgate points out the fact that both Plaintiffs alleged purchasing the products "[i]n or around July of 2019," but then filed their lawsuits almost immediately after (Huskey on July 4, 2019, and Richards on July 8,

7

2019).  Colgate argues that this quick turnaround between purchase and filing their lawsuits, along with the fact that Plaintiff Richards also filed four lawsuits against Conopco, Inc.,[1] alleging similar claims against Dove and Degree branded antiperspirants in July, 2019, shows that the purchases were made for the ulterior purpose of litigation rather than personal use.  In response, Plaintiffs assert that they both pleaded they purchased the Product for personal use and that they alleged that they, in fact, personally used the product and were disappointed with its results.  Plaintiffs argue that Colgate reads too much into the "[i]n or around July" purchase time and that Colgate's speculation as to Plaintiffs' motives cannot be used to grant a motion to dismiss.

Again, the Court agrees with Plaintiffs and finds that it would be inappropriate to dismiss their MMPA claims at this time.  Plaintiffs have alleged that they purchased the products for personal use and the Court is required to take those allegations as true at the motion to dismiss stage.  Colgate's argument—that Plaintiffs had an ulterior motive in making the purchases, as shown by the speed in which they filed their lawsuits and the other ongoing litigation filed by Plaintiff Richards—is better addressed at summary judgment or trial.

### B.  Injunctive Relief

"The MMPA expressly provides for injunctive relief, as well as damages and attorney fees, § 407.025.2, 'not only to remedy violations . . . but also to prospectively deter prohibited conduct and protect Missouri citizens.'"  *Hawkins v. Nestle U.S.A. Inc.*, 309 F. Supp. 3d 696, 706-07 (E.D. Mo. 2018) (quoting *Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 433 (Mo. 2013) (en banc)).  Here, Plaintiffs seek injunctive relief from the Court to prevent Colgate from "continuing

---

[1] *Richards v. Conopco, Inc.*, No. 4: 19-cv-02556-HEA (E.D. Mo.) ("Richards I"); *Richards v. Conopco, Inc.*, No. 4: 19-cv-02558-SRC (E.D. Mo.) ("Richards II"); *Richards v. Conopco, Inc.*, No. 4:19-cv-02726-AGF (E.D. Mo.) ("Richards III"); *Richards v. Conopco, Inc.*, No. 4: 19-cv-02728-SRC (E.D. Mo.) ("Richards IV").

to falsely state that the Stainguard Products 'fights' white marks and/or yellow staining. (Doc. No. 26 ¶ 118; Doc. No. 27 ¶ 116). Colgate, however, asserts that Plaintiffs do not have standing to pursue injunctive relief under the MMPA because they have failed to allege facts showing that they have a future intention to purchase the Stainguard products. As a result, Colgate argues, Plaintiffs claim for injunctive relief must be dismissed because they have failed to allege that they face a threat of harm.

Article III of the United States Constitution "confines the jurisdiction of federal courts to justiciable cases and controversies." *Meuir v. Greene Cnty. Jail Employees*, 487 F.3d 1115, 1119 (8th Cir.2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992)). "To satisfy this standing requirement, a plaintiff must establish (1) an injury in fact, which is (2) fairly traceable to the defendant's conduct, and which (3) will likely be redressed by a favorable decision." *Hawkins*, 309 F. Supp. 3d at 707 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Kelly*, 81 F. Supp. 3d at 762 (quoting *Lujan*, 504 U.S. at 564). Rather, "[t]o establish 'injury in fact' for purposes of injunctive relief, a plaintiff must show that he 'faces a threat of ongoing or future harm.'" *Id.* (quoting *Park v. U.S. Forest Serv.*, 205 F.3d 1034, 1037 (8th Cir. 2000)).

The Court has reviewed Plaintiffs' amended complaints and agree with Colgate's conclusion: Plaintiffs lack standing to seek injunctive relief because the complaints contain no allegations that Plaintiffs intend to continue purchasing the Stainguard Products or purchase them in the future. As a result, they have not alleged any "threat of ongoing or future harm." Plaintiffs therefore lack standing to obtain injunctive relief under the MMPA and the claim will be dismissed.

9

*See Johnson v. Atkins Nutritionals, Inc.*, No. 2:16-CV-04213-MDH, 2017 WL 6420199, at *12 (W.D. Mo. Mar. 29, 2017) ("Plaintiff's complaint provides no indication of future intention to purchase the products. . . . Therefore, Plaintiff lacks standing to obtain injunctive relief."); *Kelly*, 81 F. Supp. 3d at 763 ("Plaintiff is . . . not likely to purchase the Chips as they exist at present. Further, the Petition contains no allegations that Plaintiff intends to purchase [the product] in the future. Thus, . . . Plaintiff lacks standing to seek injunctive relief.").[2]

### C. Breach of Warranty

Missouri has adopted the Uniform Commercial Code, including the requirement that a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Mo. Rev. Stat. § 400.2-607(3)(a). "The purpose of this requirement is to provide the seller with an opportunity to correct any defects, prepare for litigation, and prevent stale claims." *Ridings v. Maurice*, No. 15-00020-CV-W-JTM, 2019 WL 4888910, at *11 (W.D. Mo. Aug. 12, 2019) (quoting *Kansas City v. Keene Corp.*, 855 S.W.2d 360, 369 (Mo. 1993) (en banc)).

Here, Plaintiffs allege that they provided notice of the breach to Colgate upon the filing of their complaints. Colgate argues that, as a result, Plaintiffs' breach of warranty claims must be dismissed because they failed to allege that they provided *pre-suit* notice to Colgate about the Challenged Claim. Although no Missouri courts have directly addressed whether pre-litigation notice is required, Colgate cites to *Budach v. NIBCO, Inc.* as instructive. No. 14-04324, 2015 WL 6870145, at *4-5 (W.D. Mo. Nov. 6, 2015). In *Budach*, the Honorable Judge Nanette Laughrey

---

[2] The Court notes that Plaintiffs presented their request for injunctive relief under the MMPA as a separate claim for relief in their amended complaints. Colgate correctly points out that "injunctive relief is a remedy and not an independent cause of action." *Wholesale All., LLC v. Express Scripts, Inc.*, 366 F. Supp. 3d 1069, 1082 (E.D. Mo. 2019). To the extent Plaintiffs were attempting to bring a freestanding claim for injunctive relief, it would likewise necessitate dismissal.

wrestled with whether Section 400.2-607(3)(a)—which only specifies the need for a buyer to alert the seller within a "reasonable time"—required notice to occur pre-suit. 2015 WL 6870145, at *3. After examining decisions across the country, Judge Laughrey found that the "majority view" of states that had adopted the UCC required that notice must be given pre-litigation. *Id.* at *4. Judge Laughrey identified two persuasive reasons for concluding that Missouri would adopt the majority view:

> (1) the purposes underlying of 400.2-607(3)(a) – "to effect a cure, or to facilitate an effort to negotiate a settlement, or to gather and preserve evidence for possible litigation," to "prevent stale claims," and "defeat commercial bad faith" – are best satisfied when a plaintiff provides pre-litigation notice of breach; and
>
> (2) the history of UCC Section 2-607 indicates that its drafters intended the provision to require pre-suit notice.

*Ridings*, 2019 WL 4888910, at *12.

Judge Laughrey ultimately found that Missouri would require pre-litigation notice for a breach of warranty claim. Other district courts—both in this District and the Western District of Missouri—have since agreed that the Missouri Supreme Court would follow this majority view and require that reasonable notice must be provided pre-suit. *See, e.g., Guilford v. Bos. Sci. Corp.*, No. 4:19-CV-00955-DGK, 2020 WL 1668279, at *3 (W.D. Mo. Apr. 3, 2020) (dismissing plaintiff's breach of warranty claims, in part, for failing to allege pre-suit notice); *Ridings*, 2019 WL 4888910, at *12 (granting summary judgment on plaintiff's breach of warranty claims for failure to provide pre-suit notice); *Gillan v. Wright Med. Tech. Inc.*, 396 F. Supp. 3d 844, 849 (E.D. Mo. 2019) ("The buyer of the product must give some type of a pre-suit notice to the seller in order to state an express breach of warranty claim.").

In response, Plaintiffs urge the Court not to adopt *Budach*'s holding and to instead follow "the more well-reasoned approach" that allows for the filing of a complaint to serve as notice of the breach. (Doc. No. 36 at 6-7 (citing *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069, 1111 (S.D. Ind.) (finding it unlikely that the Michigan and Tennessee Supreme Courts would find that the filing of a lawsuit can never satisfy the notice of breach requirement)). Plaintiff argues that the Court should adopt the holding of the *Bridgestone* Court because it is better aligned to the broad nature of the notice requirement of Section 400.2-607(3)(a) and better serves to protect buyers from ongoing misconduct. Plaintiffs subsequently argue that, even if the Court holds that pre-suit notice is required, that they did, in fact, provide pre-suit notice in filing their complaint. Plaintiffs creatively argue that,

> Once Plaintiffs amended their complaints, their previous lawsuits no longer had any legal effect except for the fact that the serving of the previous complaints constituted "notice to the seller of the nonconformity. . . . [A]s a strict matter of law, Plaintiffs' previously-filed complaints, once the amended complaints were filed, did become "pre-suit" in relation to the present, active lawsuits. [*Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1139 (8th Cir. 2014)] ("when a plaintiff files an amended complaint, the original complaint is superseded and has no legal effect").

(*Id.* at 4-6).

After consideration, the Court is persuaded by Judge Laughrey's analysis and agrees that Missouri would require pre-suit notice of the breach of warranty claim. As such, Plaintiffs were required to give Colgate notice of the Challenged Claim prior to filling their lawsuits. Plaintiffs interesting interpretation on how an amended complaint can somehow render the original complaint as "pre-suit notice" is unconvincing and not rooted in any analogous caselaw. Because the Court does not find that the original complaint constituted pre-suit notice and there are no other allegations of pre-litigation notice in Plaintiffs' complaints, the Court will dismiss Plaintiffs breach of warranty claims.

### D. Breach of Implied Contract

Under Missouri law, a claim for breach of the implied covenant of good faith and fair dealing is a contract action. *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 413 (Mo. Ct. App. 2000). To establish a breach of the implied covenant of good faith and fair dealing, "the plaintiff has the burden to establish that the defendant 'exercised a judgment conferred by the express terms of the agreement in such a manner as to evade the spirit of the transaction or so as to deny [the plaintiff] the expected benefit of the contract.'" *Lucero v. Curators of the Univ. of Mo.*, 400 S.W.3d 1, 9-10 (Mo.Ct.App.2013) (quoting *Mo. Consol. Health Care Plan v. Cmty. Health Plan*, 81 S.W.3d 34, 46 (Mo. Ct. App. 2002)).

Here, Plaintiffs allege that they had an implied in law contract with Colgate and that Colgate breached the implied contract's covenant of good faith and fair dealing. (Doc. No. 26 ¶¶ 95-99; Doc. No. 27 ¶¶ 93-97). Colgate, in response, argues that Plaintiffs' claims fail because the covenant of good faith and fair dealing does not exist in the context of an implied-in-law contract. Specifically, Colgate asserts that "a claim for breach of the covenant of good faith and fair dealing requires an existing contract" and, under Missouri Law, an implied in law contract "is not a contract at all but an obligation to do justice even though it is clear that no promise was ever made or intended." (Doc. No. 29 at 12 (quoting *TCP Printing Co., LLC v. Enter. Bank & Tr.*, No. 15-178, 2017 WL 4357378, at *6 (E.D. Mo. Sept. 29, 2017); and then *Westerhold v. Mullenix Corp.*, 777 S.W.2d 257, 263 (Mo. Ct. App. 1989) (citation and internal quotation marks omitted))).

Plaintiffs did not address Colgate's argument against their breach of implied contract claims in their response in opposition. (Doc. No. 32). In its reply, Colgate pointed out that Plaintiffs failed to respond and argued that the Plaintiffs had therefore abandoned the breach of

13

implied contract claims. (Doc. No. 33 at 8). Subsequently, Plaintiffs filed a surreply where they again did not address Colgate's arguments against its breach of implied contract claims or even acknowledged Colgate's assertions that they had abandoned the claims. (Doc. No. 36). Because "a plaintiff's failure to address a defendant's arguments on a motion to dismiss operates as an abandonment of those claims," the Court will treat Plaintiffs' failure to address Colgate's arguments as a concession. *Jarrett v. Henkel Corp.*, No. 4:15-CV-0832-DGK, 2016 WL 409819, at *2 (W.D. Mo. Feb. 2, 2016) (citing *Ursery v. Fed. Drug Enf't Admin.*, No. 4:12-cv-1911-HEA, 2014 WL 117627, at *2 (E.D. Mo. Jan. 13, 2014) (listing cases)); *see also Demien Constr. Co. v. O'Fallon Fire Prot. Dist.*, 72 F. Supp. 3d 967, 972 (E.D. Mo. 2014) ("Because Plaintiff fails to address the [Defendant's] arguments in its response, the Court finds Plaintiff has abandoned this claim."), *aff'd sub nom.*, 812 F.3d 654 (8th Cir. 2016). The Court will, therefore, dismiss the breach of implied contract claims.

### E. Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must allege (1) a benefit was conferred upon the defendant, (2) at the expense of the plaintiff, and (3) it would be unjust to allow the defendant to retain the benefit. *Federated Mut. Ins. Co. v. Peery's Auto Parts, LLC*, 2012 WL 3062720, at *2 (W.D. Mo. July 26, 2012). Here, Colgate briefly states that Plaintiffs have failed to state a claim of unjust enrichment because the claim is "derivative of Plaintiffs' flawed MMPA claims." (Doc. No. 29 at 2). However, as previously discussed, the Court has concluded that Plaintiffs have stated a claim under the MMPA. Plaintiffs' allegations similarly state a claim for unjust enrichment because Plaintiffs allege that a benefit was conferred on Colgate in the form of payment and that it would be unjust to permit Colgate to retain the benefit in light of the Challenged Claim, which misled purchasers about the stain fighting effects of the Stainguard

14

products. Accordingly, the unjust enrichment claim is sufficiently pled and will not be dismissed.

### F. Nationwide Class Allegations

#### 1. Material Variations in State Law

Colgate first moves to dismiss or strike the nationwide class allegations because class certification on Plaintiffs' unjust enrichment[3] claims is not appropriate under Rule 23(b)(3). FED. R. CIV. PRO. 23(b)(3) (stating that, a "class action may be maintained if . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members"). Colgate asserts, and Plaintiffs agree, that Missouri's choice-of-law principles call for application of "the law of the state where the transactions occurred." (Doc. No. 29 at 14 (quoting *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*, No. 16-02709, 2019 WL 1418292, at *5 (W.D. Mo. Mar. 21, 2019)). As a result, each putative class member's claims would be governed by the law of the state where they purchased the products, which Colgate argues would render certification unmanageable. Colgate cites several cases in support of that contention in which courts have struck class allegations where material variations in state law would fail to meet Rule 23(b)(3)'s predominance requirement. In response, Plaintiffs do not challenge the case law but instead assert that Colgate's request is premature and argue that they should be allowed to present argument as to Rule 23 when it moves for class certification.

The Court is aware that Eighth Circuit precedent allows for the dismissal of class claims at the motion to dismiss stage of litigation, *McCrary v. Stifel, Nicolaus & Co.*, 687 F.3d 1052, 1059 (8th Cir. 2012), and that Federal Rule of Civil Procedures 23(c)(1)(A) states that ""[a]t an early

---

[3] Colgate argues that Plaintiffs breach of warranty and breach of implied contract claims are similarly inappropriate for adjudication as a class action. However, as discussed above, the Court finds those claims are properly dismissed.

15

practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." "However, while judges enjoy liberal discretion to strike pleadings, the Eighth Circuit has also recognized that striking a party's pleading 'is an extreme and disfavored measure.' *Anglin v. Edgewell Pers. Care Co.*, No. 4:18-CV-00639-NCC, 2018 WL 6434424, at *13 (E.D. Mo. Dec. 7, 2018) (quoting *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007)); *see also Doyel v. McDonald's Corp.*, No. 4:08-CV-1198-CAS, 2009 WL 350627, at *5 (E.D. Mo. Feb. 10, 2009) (noting that "[s]triking plaintiffs' class action allegations prior to discovery and the class certification stage is a rare remedy"); *Nobles v. State Farm Mut. Auto. Ins. Co.*, No. 10-04175-CV-C-NKL, 2012 WL 4090347, at *2 (W.D. Mo. Sept. 17, 2012) ("The weight of authority indicates that courts should meet motions to dismiss class allegations at the 12(b)(6) stage with a great deal of skepticism.").

After considering the caselaw provided by Colgate, the Court notes that it has serious doubts as to whether Plaintiffs will be able to satisfy the predominance requirement. However, the Court finds that the decision as to the survival of Plaintiffs' class allegations should be made after allowing Plaintiffs to conduct discovery or on motion to the Court wherein they can provide additional briefing to explain whether the prerequisites of Rule 23 can be satisfied. Given the severity of striking class allegations at this early stage of the litigation, the Court—out of caution—will decline to strike the nationwide class allegations at this time. *Anglin*, 2018 WL 6434424, at *13 (expressing concern as to plaintiffs' ability to prove predominance for nationwide unjust enrichment claims but declining to strike the allegations at the motion to dismiss stage).

### 2. Personal Jurisdiction Over Non-Resident Putative Class Members

Colgate, relying on *Bristol-Myers*, next moves to dismiss or strike the claims of non-resident putative class members under the premise that the Court lacks personal jurisdiction. For background,

> In *Bristol-Myers*, out-of-state plaintiffs, along with California plaintiffs, alleged a host of state-law claims in mass tort. The *Bristol-Myers* Court held that it lacked specific personal jurisdiction over the out-of-state defendant drug manufacturer because there was no "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." The [Supreme] Court reasoned that "the mere fact that other plaintiffs were [harmed by the defendant] in California does not allow the State to assert specific jurisdiction over the nonresidents' claims."

*Harrison v. Gen. Motors Co.*, No. 17-3128-CV-S-SRB, 2018 WL 6706697, at *6 (W.D. Mo. Dec. 20, 2018) (internal citations omitted). In deciding *Bristol-Myers* the Supreme Court did not clarify whether its holding extended to putative class actions. *Krumm v. Kittrich Corp.*, No. 4:19 CV 182 CDP, 2019 WL 6876059, at *4 (E.D. Mo. Dec. 17, 2019).

Colgate argues that the Court should extend the *Bristol-Myers* holding to the case at hand, asserting that its rationale "applies equally" to nationwide class claims. Colgate goes on to cite cases, including one from this District,[4] holding that *Bristol-Myers* applies in the class action context. In response, Plaintiff recognizes that there is a split as to whether *Bristol-Myers* applies in the class action context but argues that the better reasoned decisions have declined to extend its rationale. Plaintiff, likewise, directs the Court to recently published decisions in our District that found that *Bristol-Myers* should not be extended.[5]

---

[4] *See In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d 711 (E.D. Mo. 2019).

[5] *See Krumm*, WL 6876059; *Swinter Grp., Inc. v. Serv. Of Process Agents, Inc.*, 2019 WL 266299, at *2 (E.D. Mo. Jan. 18, 2019).

After consideration, the Court declines to apply *Bristol-Myers* in this class action and "agree[s] with the 'better reasoned decision' of the numerous courts across the country that have declined to extend BMS." *See Krumm*, 2019 WL 6876059, at *4 (quoting *Swinter Grp.*, 2019 WL 266299, at *3); *see, e.g.*, *Moore v. Compass Grp. USA, Inc.*, No. 4:18CV1962 RLW, 2019 WL 4723077, at *9 (E.D. Mo. Sept. 26, 2019) (declining to dismiss nationwide breach of contract claim after finding *Bristol-Myers* inapplicable); *Harrison*, 2018 WL 6706697, at *7 (declining to dismiss nationwide breach of contract and unjust enrichment claims after finding *Bristol-Myers* inapplicable); *Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1334 (D. Minn. 2018) (declining to dismiss nationwide breach of express warranty, breach of implied warranty, fraud, and unjust enrichment claims after finding *Bristol-Myers* inapplicable). In so doing, the Court adopts the reasoning elucidated by the Honorable Judge Catherine Perry in *Krumm*:

> In a consolidated mass tort action, as in *BMS*, each plaintiff is a real party in interest to independent lawsuits. Accordingly, in mass tort actions, the plaintiffs must independently establish the jurisdictional prerequisites to pursue their individual claims. *Bristol-Myers*, 137 S. Ct. at 1781. Here, by contrast, there is only one lawsuit, brought by [two named plaintiffs], so there are just [two] 'part[ies]' for purposes of determining the Court's jurisdiction. *Id.*; *see also Molock v. Whole Foods Mkt., Inc.*, 297 F.3d 114, 126 (D.D.C. 2018). "Nonnamed class members . . . may be parties for some purposes and not for others." *Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002). While absent class members are considered 'parties' in certain procedural respects, such as being bound to certified class action settlements, "[a]bsent class members are not parties for purposes of determining whether there is complete diversity of citizenship in cases governed by substantive state law." *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 815, 820 (N.D. Ill. 2018) (citing *Scardelletti*, 536 U.S. at 10). If the residency of unnamed class members is not considered in determining diversity of citizenship, it follows that the same should not be considered in assessing the jurisdictional reach of Missouri's long-arm statute. *Id.* at 822. Indeed, "[e]ase of administration of class actions would be compromised by having to consider the citizenship of all class members, many of whom may even be unknown, in determining jurisdiction." *Scardelletti*, 536 U.S. at 10 (citing Charles Alan Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 1755, pp. 63–64 (2d ed. 1986)).
>
> [Further,] "[u]nlike mass tort, Rule 23 provides procedural due process safeguards for class actions: numerosity, commonality, typicality, adequacy of representation,

predominance, and superiority." *Swinter*, 2019 WL 266299, at *2. "Given these safeguards, due process concerns for the defendant in the class action context are far less compelling than in a mass tort such as BMS, where each joined plaintiff may make different claims requiring different responses." *Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1334 (D. Minn. 2018). These safeguards "ensure that the defendant will be 'presented with a unitary, coherent claim to which it need respond only with a unitary, coherent defense.'" *Id.* (quoting *Sanchez v. Launch Tech. Workforce Sols., LLC*, 297 F.3d 1360, 1366 (N.D. Ga. 2018)).

2019 WL 6876059, at *5.

In addition to this thorough analysis as to why class and mass tort actions are properly treated differently, the Court also agrees with Judge Perry that, holding that *Bristol-Myers* applies, would mean finding that the Supreme Court would have "drastically limited the nationwide class action mechanism without expressly stating its intent to do so." *Id.* The Court finds it highly unlikely that the Supreme Court would have catalyzed such an extraordinary change in this manner. *See id.* (quoting *Al Haj*, 338 F. Supp. 3d at 819 ("Had the Supreme Court truly sought to bar certification of nationwide or multistate class actions on due process grounds in all but the one or two States where the defendant is subject to general jurisdiction, it [is] implausible that it would have done so obliquely, in a mass action . . . .")). For these reasons, the Court finds that *Bristol-Myers* does not apply in the class action context, and Colgate's motion to dismiss for lack of personal jurisdiction will be denied.

### IV. Conclusion

For the foregoing reasons, the Court shall grant Defendant's motion in part, and deny it in part.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Colgate's motion to dismiss or, in the alternative to strike the nationwide class allegations, is **GRANTED in part** and **DENIED in part**. (Doc. No. 28). Defendant's motion is granted as to Plaintiffs' claims for injunctive relief, breach

19

of warranty, and breach of implied contract. As such, those claims are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that Defendant Colgate shall file an answer to the surviving claims within **thirty (30) days** of this Order.

**IT IS FURTHER ORDERED** that Defendant's November 26, 2020 motion to dismiss, which was filed before Plaintiffs' filed their amended complaints, is **DENIED as moot.** (Doc. No. 24).

Dated this 14th day of September, 2020.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**